UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **EDNA CARTER** | **CASE NO. 3:20-CV-01328** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BROOKSHIRE GROCERY CO ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 25] filed by Defendant Brookshire Grocery Co. ("Brookshire"). An Opposition [Doc. No. 31] was filed by Plaintiff Edna Carter ("Carter") on November 23, 2021. A Reply [Doc. No. 32] was filed by Brookshire on November 29, 2021.

For the reasons set forth herein, Brookshire's Motion for Summary Judgment is GRANTED.

**I.      BACKGROUND**

On September 2, 2020, Carter filed a Petition for Damages, Individually and on Behalf of the Estate of Johnny Carter, in the Fifth Judicial District Court, Franklin Parish, Louisiana, against Brookshire as a result of an alleged slip and fall involving Johnny Carter (hereinafter referred to as "Mr. Carter") at Brookshire's store in Winnsboro, Louisiana, on November 4, 2019. On October 13, 2020, a Notice of Removal [Doc. No. 1] was filed by Brookshire removing the suit to this Court on the bases of diversity jurisdiction.

Brookshire filed their Motion for Summary Judgment [Doc. No. 25] on November 1, 2021. Brookshire attached to its motion the Affidavits of Jennifer Cloud ("Cloud") [Doc. No. 25-3, pp. 1-7]; Kellie Tabora ("Tabora") [Doc. No. 25-3, pp. 8-11]; Mike Milligan ("Milligan") [Doc. No. 25-3, pp. 12-15]; Fred Brown ("Brown") [Doc. No. 25-3, pp. 16-19] long with the

Depositions of Carter [Doc. No. 25-3, pp. 20-92]; Cloud [Doc. No. 25-3, pp. 93-130]; Tabora [Doc. No. 25-3, pp. 131-146]; Milligan [Doc. No. 25-3, pp. 147-167]; and Brown [Doc. No. 25-3, pp. 168-186].

The evidence attached shows that no one actually saw Mr. Carter's fall occur,[1] and the only person who saw the substance on the floor after the fall was Store Manager Cloud. The fall was not recorded by video, but video in adjacent areas showed that Tabora, Milligan, and Brown were in the area prior to Mr. Carter's fall; the fall occurred at 12:08 p.m.; Tabora passed the area where the fall occurred at 11:46 a.m., 22 minutes prior to the fall; Brown passed by the area where the fall occurred at 11:56 a.m., 12 minutes prior to the fall; Milligan passed by the area where the fall occurred at 12:02 p.m., 6 minutes prior to the fall; and that none of these store employees saw the liquid substance on the floor that Mr. Carter slipped on.

Cloud, the store manager did not see the fall occur, but when made aware of the fall, went to the area which she described as the store's "meat section." She described the substance Mr. Carter slipped on as "meat blood" and took two photographs of the substance. Cloud stated the substance was wet and no dirt, debris, footprints, or buggy tracks were in it. She described one slip or slide mark in the substance. She filled out an Incident Report that stated Mr. Carter fell in meat blood that was about two feet long.

Both Tabora and Milligan were employees of Brookshire who were working at the time of Mr. Carter's fall. Both were identified on video as being in the area prior to the fall, but neither independently remembered it. Both stated they know that they did not see the substance on the floor prior to Mr. Carter's fall. Both stated they are trained to look for substances on the floor and felt the substance was likely not present when they passed through this area.

---

[1] Mr. Carter is now deceased.

Brown worked at Brookshire in the produce section. He was at lunch when the fall occurred. He never actually saw the substance on the floor. Brown verified that although he did not remember passing through the area, he was trained to look for substances on the floor and believes it is likely the substance was not there when he passed by the area prior to Mr. Carter's fall.

Although Brown did not actually see the substance on the floor, he stated in both his affidavit and deposition that from viewing the photographs, the substance appeared to be "dried blood." He also stated it would take approximately ten minutes for the blood to dry. However, because he did not actually see the substance, he deferred to Cloud, who did see it.

In Carter's Opposition, she attached a recorded interview of Mr. Carter [Doc. No. 31-4 pp. 5-13]. Carter alleges the statement says that the fall occurred by the meat counter. Mr. Carter stated in the interview that several people saw it happen and that even the store manager was there. Mr. Carter described the substance as "something wet" and a "big puddle in the middle of the floor." Mr. Carter never saw the substance before he fell. Mr. Carter did not know what the substance was.

In the Reply, Brookshire argues the interview of Mr. Carter and the statement of Brown that the substance was dried blood that had likely been there for ten minutes should not be considered because they would not be admissible at trial.

## II. LAW AND ARGUMENT

A slip and fall inside a grocery store is governed by La. R.S. 9:2800.6, which requires the plaintiff to prove all of the following elements:

1. A condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;

3

2. The merchant either created the condition or had actual or constructive notice of the condition which caused the damage prior to the occurrence;

3. The merchant failed to exercise reasonable care.

"Constructive notice" is defined in La. R.S. 9:2800.6 as meaning that "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care."

Brookshire argues that Carter is unable to prove element Number 2 (notice of condition) and Number 3 (reasonable care).

### A. Constructive Notice

There is no evidence that Brookshire created the condition or had actual knowledge of the condition prior to Mr. Carter's fall. Therefore, the issue is whether Carter has met her burden of creating an issue of fact as to the constructive notice of the condition by Brookshire. In *White v. WalMart Stores, Inc.,* 699 So.2d 1081 (La. 1977), the Louisiana Supreme Court stated what is required for a plaintiff to show constructive notice under La. R.S. 9:2800.6. The Supreme Court held the plaintiff must show a "temporal element," which requires a positive showing of the existence of the condition prior to the fall. A plaintiff must show the condition existed for "some time" before the fall. Whether the period of time is sufficiently lengthy that a merchant could have discovered the condition is a question of fact.

Mere speculation or suggestion as to the period of time under which a condition was on the floor prior to an incident is not enough to meet the burden imposed upon a plaintiff by La. R.S. 9:2800.6. *Babin v. Winn-Dixie Louisiana, Inc.,* 764 So.2d 37 (La. 2000).

In Carter's Opposition, she relies upon the recorded interview of Mr. Carter and the affidavit and deposition testimony of Brown to prove that the substance had been present for "some time" prior to Mr. Carter's fall. The temporal element may be shown by direct or

4

circumstantial evidence. *Rodgers v. Food Lion, Inc.*, 756 So.2d 624, 628 (La. App. 2d Cir. 2000), writ denied,765 So.2d 339 (La. 2000). There is no "bright line time period" of how long the substance must be present. *Lewis v. Jazz Casino Co., LLC*, 245 So.3d 68, 75-76 (La. App. 4th Cir. 2018), writ denied 252 So.3d 878 (La. 2018).

Brookshire maintains the recorded interview of Mr. Carter and the testimony of Brown as to his opinion from a photograph of the condition would not be admissible at trial and, therefore, should not be considered in this summary judgment.

While a movant is not required to produce evidence in a form that would be admissible at trial in order to avoid summary judgment, the content of the evidence must be admissible at trial. *Miller v. Gaston,* 358 Fed. Appx. 573, 575 (5th Cir. 2009).

### i. Mr. Carter Recorded Interview

The interview of Mr. Carter was conducted on November 5, 2019 by Julie DelRe of Sedgwick Claim Management Services, Inc. Brookshire objects to the evidence and argues it would not be admissible at trial because it is hearsay. This Court agrees. The truth of the matter is being asserted – that other Brookshire employees and customers were in the area prior to and when the fall occurred. Federal Rule of Evid. Article 801(c)(2). Hearsay is not admissible unless an exception applies. Federal Rule Evid. Article 802. Federal Rule of Evid. Article 804 applies as an exception against the rule of hearsay when the declarant is unavailable. Because Mr. Carter has since passed away after the fall occurred, he is unavailable. However, former testimony of an unavailable witness is only allowed when the declarant was a witness at trial, hearing, or lawful deposition. Federal Rule Evid. Article 804(b)(1)(a). Since the recorded interview does not meet these requirements, it would be inadmissible at trial and will not be considered in this motion for summary judgment.

      **ii.    Brown Testimony**

In Brown's Affidavit [Doc. No. 25-3 pp. 16-19] and Deposition [Doc. No. 25-3 pp. 168-186], Brown testified, while looking at the photograph taken by Jennifer Cloud, that the substance appeared to be "dried blood" and that it would take approximately ten minutes for the blood to dry. Brookshire has also objected to this testimony, as it would not be admissible at trial and, therefore, should not be considered in this summary judgment proceeding. This Court agrees.

Federal Rule Evid. Article 702 prohibits a lay witness from testifying as to his opinion, except as allowed by FRE Article 701. Federal Rule Evid. 701 allows a lay witness to give an opinion limited to the witness "perception." In order for the witness to testify to his "perception" he must have "personally observed" the event/item. *Randolph v. Collectmatic, Inc.*, 590 F.2d 844 (10th Cir. 1979). Brown did not "personally observe" the substance. He only looked at photographs of it, and readily deferred to Cloud, who did personally observe the substance. Therefore, Brown's testimony that the substance appeared to be "dried blood" would not be admissible at trial and will not be considered in this summary judgment proceeding.

The testimony of Brown that the blood would have had to have been there for ten minutes to dry is also inadmissible as it would require scientific, technical or other specialized knowledge. Fed. Rule Evidence Article 701(c). This testimony also will not be considered by this Court in this summary judgment.

Without considering the testimony of Brown, and the recorded interview of Mr. Carter, Carter is unable to prove that the substance had existed for "some time" prior to the fall, and she is unable to satisfy the constructive notice requirement.

## B. Reasonable Care

Although it is not necessary to address the third element of La. R.S. 9:2800.6[2], the Court will nevertheless address it. There is simply no evidence that Brookshire failed to exercise reasonable care. Brookshire pointed out through the Affidavits of Cloud, Tabora, Milligan and Brown that Brookshire had a number of safety measures in place to keep meat in the meat market from dripping on the floor, including bag dispensers and paper towel dispensers located in the meat market, Swiffer mops kept nearby, mats placed in the meat market, spill stations in the meat market, lips on counters to avoid potential runoff, and store employee training to continually watch the area for meat blood.

Also, Cloud testified she was not aware of any other accident involving slips on meat blood during her tenure. She also testified that the meat blood was wet, had only one slip or slide mark in it; and had no dirt, debris, footprints, or buggy tracks in it. [Doc. No. 25-3 pp. 1-7].

The only evidence of any fault is shown in the Deposition of Milligan, who testified that meat juice will leak out of packed chicken "fairly often" and that it is "not uncommon." Milligan also testified it is "sometimes" a "daily occurrence." [Doc. No. 25-3 pp. 147-167]. However, a merchant is not the insurer of safety of its patrons. *Burns v. Sedgwick Claims Management Services, Inc.,* 165 So.3d 147, 153 (La. App. 5th Cir. 2014). Additionally, a merchant is not required to keep floors of entrance ways, aisles, and passageways in perfect condition. *Estes v. Kroger Co.*, 556 So.2d 240 (La. App. 2d Cir. 1990), writ denied, 559 So.2d 1360 (La. 1990).

---

[2] Since all three elements must be proved.

7

Brookshire had numerous safety measures in place. It does not have a duty to monitor every customer who buys meat in their meat department. Brookshire did not fail to exercise reasonable care.

## III. CONCLUSION

For the reasons set forth herein.

IT IS ORDERED, ADJUDGED, AND DECREED that Brookshire's Motion for Summary Judgment [Doc. No. 25] is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all claims of Edna Carter against Brookshire Grocery Co., et al are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 6th day of December 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE